UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                      :
                                            : Case No. 08-11242 (MG)
        RUDOLFO LOZANO AND                  :
        MARIA LOZANO,                       : (Chapter 13)
                               Debtors.     :
-------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER RE DISCOVERY FROM SAXON
MORTGAGE SERVICES AND WELLS FARGO BANK**


*A P P E A R A N C E S:*

DAVID J. HOFFMAN
29 Broadway, 27th Floor
New York, NY 10006
By:  David J. Hoffman
*Attorney for Debtors*

BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
By:  Glenn E. Glover
*Attorneys for Saxon Mortgage Services*

SAIBER LLC
One Gateway Center – 13th Floor
Newark, NJ 07102-5311
By:  Vincent F. Papalia
       Collin R. Robinson
*Attorneys for Wells Fargo Bank, N.A., as trustee*


**MARTIN GLENN**
**United States Bankruptcy Judge**


        This opinion and order resolves a discovery dispute between the chapter 13

debtors, Rudolfo and Maria Lozano ("Debtors"), on the one hand, and Saxon Mortgage

Services ("Saxon") and Wells Fargo Bank ("Wells Fargo"), on the other hand.  The

Debtors seek discovery from Saxon and Wells Fargo to which each objects in part.
Saxon and Wells Fargo do not object to producing documents in their possession relating
to the mortgage loans that they now own or service relating to two properties identified
below in which the Debtors claim an equitable interest.  Saxon and Wells Fargo do
object, however, to having to obtain and produce documents that are or may be in the
possession, custody or control of Fremont Investment and Loan ("Fremont"), the
originator of the mortgage loans.  Saxon and Wells Fargo disclaim having any agency or
servicing relationship with Fremont relating to the specific mortgages at issue, and the
Debtors have not offered any evidence establishing such a relationship.  After telephone
hearings with counsel on July 10 and 17, 2008 concerning the discovery dispute without
briefing, I directed counsel to file briefs not to exceed 5 pages in length addressing the
legal issues involved.

The issues raised in this discovery dispute are important particularly in chapter 13
cases in which disputes exist between debtors and mortgagees and loan servicers.
Because mortgage loans arranged by mortgage brokers are frequently sold or securitized
by the originators or subsequent mortgagees, and the loan servicers are frequently
changed, debtors seeking discovery about their loans can be faced with a complex and
bewildering challenge to obtain relevant information necessary to prosecute or defend
claims.

For the reasons stated below, Debtors' motion to compel production of Fremont
documents is denied, unless those documents are in Saxon's and Wells Fargo's
possession.

## BACKGROUND

In 2006, the Debtors owned properties in Newburgh, New York (the "Newburgh property") and Kingston, New York (the "Kingston property"). The Debtors wanted to borrow against the two properties and use the proceeds for personal expenses and to invest in other rental properties. The Debtors were introduced to Patrick Bowie ("Bowie"),[1] who offered to arrange loans for the Debtors from Fremont Investment and Loan ("Fremont"). At the time of their introduction to Bowie, title to each of the Newburgh and Kingston properties was held in Debtors' names. The Debtors – who speak and read little or no English – claim they were duped by Bowie into transferring title to the Newburgh and Kingston properties to Bowie's mother, Roselee Hayward ("Hayward"). Fremont originated mortgage loans to Hayward on the Newburgh and Kingston properties, allegedly with Bowie acting as Fremont's mortgage broker, with some of the loan proceeds paid to the Debtors.

The $195,000 mortgage loan on the Newburgh property was originated by Fremont to Hayward in September 2006. Fremont subsequently sold the mortgage to a mortgage pool trust for which Wells Fargo is the trustee and custodian and for which Saxon is the servicer.

The $126,400 mortgage loan on the Kingston property was originated by Fremont to Hayward in July 2006. Fremont transferred the mortgage to Wells Fargo, as trustee for the Carrington Mortgage Loan Trust, in April 2008.

The Debtors contend that they have an equitable interest in the Newburgh and Kingston properties, although title to both properties is currently held by Hayward. The

---

[1]    Bowie is now serving a life sentence without the possibility of parole based on a 2007 first degree murder conviction in New York state court.

Debtor Rudolpho Lozano ("Lozano") testified at an earlier hearing in this case that he believed Bowie was a mortgage broker for Fremont, and that Bowie helped the Debtors obtain mortgage loans from Fremont on rental properties the Debtors would own (including the Newburgh and Kingston properties), with the monthly mortgage payments made by the Debtors to Hayward, believing that she, in turn, would make the payments to the mortgagees.  Lozano testified that he made the monthly payments to Hayward, but Hayward did not pay the mortgagees, leading the mortgagees or their servicers or successors to threaten or commence foreclosure proceedings.  The chapter 13 case was filed, at least in part, to stay the foreclosure proceedings.[2]

At this stage of the chapter 13 case, the Debtors are seeking a court determination that the automatic stay under Bankruptcy Code § 362 extends to the Newburgh and Kingston properties, preventing the mortgagees or loan servicers from foreclosing on the mortgages without first obtaining an order from this Court lifting the automatic stay.

On August 8, 2008, after the argument and briefing concerning the discovery dispute, the Debtors filed an adversary proceeding naming as defendants Fremont, Saxon, Carrington Mortgage Services, LLC ("Carrington"), Bowie, Hayward, and 5 other individuals.  (Adv. Proc. 08-01388, Compl.; ECF # 1.)  The complaint seeks money damages for fraud, aiding and abetting fraud, and tortious interference with economic relations.  The complaint also seeks cancellation of the mortgages and permanent injunctions against foreclosure.  It is not clear whether the complaint has been served.

---

[2]     Two additional properties are also involved in this case.  The Debtors claim that Bowie defrauded them with respect to the additional properties as well.  Countrywide Home Loans, Inc. ("Countrywide") is the servicer with respect to a mortgage on property in Watervliet, New York.  The last property involved is located in New Hampton, New York.  It is unclear whether mortgage fraud is alleged with respect to the New Hampton property.  This discovery dispute does not involve the Watervliet or New Hampton properties.

The adversary proceeding is scheduled for an initial pretrial conference on September 25, 2008.  (Adv. Proc. 08-01388, ECF # 2.)  No discovery has been taken as yet in the adversary proceeding, but that proceeding clearly provides a vehicle for Debtors to undertake discovery directly against Fremont.

The issue in the main case is whether the Debtors have a legal or equitable interest in the Newburgh and Kingston properties such that they are property of the Debtors' estate under Bankruptcy Code § 541.  If so, the automatic stay applies to prevent foreclosure of the mortgages unless the Court first lifts the automatic stay.  At a hearing on April 17, 2008, based on Lozano's testimony and other evidence offered at the hearing, the Court issued a temporary restraining order preventing the commencement or prosecution of foreclosure proceedings.  The temporary restraining order has been extended by consent of the parties until the Court determines whether the automatic stay applies to the properties.  (ECF # 18.)

Following the April 17 hearing, the Debtors initiated written discovery against Saxon and Wells Fargo.  Both Saxon and Wells Fargo agreed to produce all documents in their possession, custody or control relating to the mortgage loans on the Newburgh and Kingston properties, including any part of the original Fremont loan files that they have in their possession.  Debtors' counsel insists that Saxon and Wells Fargo must also produce information that is in Fremont's possession, custody or control.  Saxon and Wells Fargo deny that they have any obligation to obtain and provide such information.

**THE LEGAL ISSUE IN DISPUTE**

The Debtors' counsel contends that Saxon and Wells Fargo can be compelled to obtain and produce to the Debtors documents in the possession, custody or control of

Fremont.  Debtors' counsel has not initiated discovery directly against Fremont, instead

arguing that Saxon and Wells Fargo are obligated to obtain and produce the Fremont

documents.  In support of his argument, Debtors' counsel relies principally on Judge

Lynch's decisions in *J.P. Morgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y.

2005) (*"Winnick I"*), and *J.P. Morgan Chase Bank v. Winnick*, 2006 W.L. 278192

(S.D.N.Y. 2006) (*"Winnick II"*).  Saxon and Wells Fargo argue that they can only be

required to produce documents in their possession, custody or control, relying on FED. R.

CIV. P. 34 ("Any party may serve on any other party a request within the scope of Rule

26(b): (1) to produce . . . the following items in the responding party's possession,

custody or control . . . .") and *Shcerbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d

Cir. 2007).  This is a contested matter under FED. R. BANKR. P. 9014 in which FED. R.

CIV. P. 34 applies.

As explained below, I conclude that *Shcerbakovskiy*, *Winnick I* and *Winnick II* do

not conclusively control the outcome of the discovery issue before the Court.  Since

Debtors have not shown that Saxon and Wells Fargo are agents of Fremont or acting on

its behalf, nor have they shown that Saxon and Wells Fargo have the practical ability to

obtain disputed documents from Fremont, Saxon and Wells Fargo cannot be compelled to

obtain documents from Fremont and produce them to Debtors' counsel.  If the Debtors

want discovery from Fremont, they will have to undertake it directly, something they can

easily do.  I do not decide whether Saxon and Wells Fargo may be compelled to obtain

and produce Fremont documents if the Court subsequently determines that the Newburgh

and Kingston properties are property of the estate and Saxon and Wells Fargo

affirmatively seek orders lifting the automatic stay to permit them to foreclose on the
properties.

## DISCUSSION

### A.        Rule 34 Provides the Standards for Production of Documents

Rule 34 controls the scope of document production in adversary proceedings and
contested matters, requiring production of documents "in the responding party's
possession, custody or control . . . ." FED. R. CIV. P. 34(a)(1).  The disputed documents
are not in the possession or custody of Saxon and Wells Fargo.  Therefore, the central
issue here is whether the disputed documents are in Saxon's and Wells Fargo's "control."
That issue requires the Court to determine what is meant by "control."

"The concept of 'control' is very important in applying the rule, but the
application of the concept is often highly fact-specific.  [Production may be required] if
the party to whom the request is made has the legal right to obtain the document, even
though in fact it has no copy."  8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER &
RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994)
(footnote omitted).  Professor Wright's treatise goes on to point out that "under some
circumstances courts interpret the concept to go beyond whether the litigant has a legal
right to obtain materials and focus on *practical ability to obtain them*.  Caution must be
exercised when the notion of control is extended in this manner, however, because
sometimes the party's ability to obtain compliance from nonparties may prove more
modest than anticipated."  *Id.* (emphasis added).

**B.**        **The Debtors Bear the Burden of Establishing Saxon's and Wells Fargo's Control Over Fremont's Documents**

Saxon and Wells Fargo deny having all of the Fremont documents requested by the Debtors (and they agree to produce what they do have). They also deny having the legal right or authority to obtain documents from Fremont. Debtors have provided no evidence that Saxon and Wells Fargo have or can obtain the documents other than through the use of compulsory process. Debtors appear to argue that Saxon and Wells Fargo have the practical ability to obtain the documents, essentially by asking Fremont for them. Alternatively, the Debtors would place the burden on Saxon and Wells Fargo to seek the documents from Fremont through compulsory process, if necessary.

Faced with an objection to production the burden is on the party seeking discovery to establish that the party to whom the request is directed has the ability to produce the documents. *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992) ("In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion.") (citation omitted); *see also Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 147 (S.D.N.Y. 1997) (same); *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991) ("[A] party seeking production of documents bears the burden of establishing the opposing party's control over those documents."); 7-34 MOORE'S FEDERAL PRACTICE – CIVIL § 34.14 (2008) ("The burden of establishing control over the documents sought is on the party seeking production.") (footnote omitted).

**C.      Saxon and Wells Fargo May Be Required to Produce Documents They Have the Legal Right, Authority or Practical Ability to Obtain**

The Debtors have not made any showing that Saxon or Wells Fargo has the legal right or authority to obtain documents from Fremont.  The Debtors contend, however, that Saxon and Wells Fargo have the practical ability to obtain the documents from Fremont.

With respect to the application of the "practical ability" test, the utility of the doctrine in the Second Circuit is uncertain.  In *Shcerbakovskiy*, the Second Circuit appears to have adopted − potentially with an important *caveat* − the view that a party may be required to produce documents that it has the practical ability to obtain.  The court stated as follows:

> Turning to the legal issues first, a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain.  *See* FED. R. CIV. P. 34(a) ("Any may serve on any other party a request . . . to produce . . . documents . . . which are in the *possession, custody or control* of the party upon whom the request is served . . . ." (emphasis added)), *E.E.O.C. v. Carrols Corp.,* 215 F.R.D. 46, 52 (N.D.N.Y. 2003); *see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 204, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (acknowledging that Rule 34 requires inquiry into whether party has control over documents), *Fisher v. U.S. Fidelity & Guar. Co.,* 246 F.2d 344, 350 (7th Cir. 1957).  We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents.  However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.  *In Re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996).

*Shcerbakovskiy,* 490 F.3d at 138 (footnote omitted).

*Shcerbakovskiy* does not define what establishes a "practical ability" to obtain documents, but the only case cited in support is Judge Sweet's decision in *In Re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (concluding that courts may compel production of documents if a party has the practical

ability to obtain them).  Judge Sweet, in turn, relies for support on the district court

decisions in *Golden Trade,* 143 F.R.D. at 525 (S.D.N.Y. 1992) (Courts have also

"interpreted Rule 34 to require production if the party has the practical ability to obtain

the documents from another, irrespective of his legal entitlement.") and *Scott v. Arex,*

*Inc.,* 124 F.R.D. 39, 41 (D. Conn. 1989) ("A party controls documents that it has the

right, authority, or ability to obtain upon demand.").  Other courts have also recognized

the "practical ability" test.  *See, e.g., U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d

245, 254 (D.C. Cir. 2005) ("'Control' is defined as the legal right, authority or ability to

obtain documents upon demand.") (quoting *Camden Iron & Metal, Inc. v. Marubeni*

*America Corp.,* 138 F.R.D. 438, 441 (D.N.J. 1991)); *Ice Corp. v. Hamilton Sundstrand*

*Corp.*, 245 F.R.D. 513, 517 (D. Kan. 2007) ("Therefore, Rule 34(a) enables a party

seeking discovery to require production of documents beyond the actual possession of the

opposing party if such party has retained 'any right or *ability to influence* the person in

whose possession the documents lie.'  Put another way, 'Rule 34 performs the salutary

function of creating access to documentation in an economical and expeditious fashion by

requiring a party to produce relevant records not in its physical possession when the

records can be *obtained easily* from a third-party source.'  'Production of documents not

in a party's possession is required if a party has the *practical ability* to obtain the

documents from another, irrespective of legal entitlements to the documents.'  To that

end, '[t]he ability to obtain documents on demand is not affected by the source's

retention of ownership or its unilaterally imposed restriction on disclosure.'") (emphasis

in original) (footnotes omitted); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636

(D. Minn. 2000) (concluding that documents are considered to be under party's "control"

when that party has right, authority, or practical ability to obtain documents from nonparty); *Bank of New York*, 171 F.R.D. at 146 ("Under Rule 34, however, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.").

The legal right to obtain documents or information from another may arise by contract, *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988) (requiring production where seller of real property had control of report prepared for purchaser and maintained in purchaser's possession by virtue of provision in sales contract requiring purchaser to make records available to seller); *In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445-46 (S.D.N.Y. 2000) (concluding that a party entering into a contract subjected himself to risk that failure to provide information may constitute a material breach of the agreement), or as a result of an agency relationship, *Winnick I*, 228 F.R.D. at 507 (holding that administrative agent suing on behalf of holders of debt was obligated to produce documents and information in possession of holders to the same extent as if the holders had brought the suit).[3]  On these principles, a loan servicer could be required to produce documents in the possession, custody or control of the current mortgagee for whom it services the loan and mortgage.  In this case, however, the discovery dispute focuses on whether the servicer must obtain and produce documents from a prior

---

[3]      A frequently recurring issue is whether a parent or subsidiary corporation may be required to produce documents in the possession, custody or control of another company in a corporate family tree. *See, e.g.*, FEDERAL PRACTICE AND PROCEDURE § 2210 nn.8 & 9.  Additionally, the issue also frequently arises whether corporate employees, officers or directors who are parties may be compelled to produce documents in the possession, custody or control of the non-party corporation. *Id.* at nn.11 & 12.  There is no allegation or evidence here that Fremont is part of the family tree of Saxon or Wells Fargo.  Therefore, the Court need not address whether production can be mandated on that basis.

mortgagee, Fremont, not whether they must produce documents on behalf of the current

mortgagees.  Debtors' counsel has made no showing of any contract or agency

relationship that gives the loan servicer or current mortgagee the right to obtain such

documents from Fremont.  Absent such a showing, Saxon and Wells Fargo cannot be

compelled to obtain and produce such documents on the theory that they have a legal

right to the documents.

> While the "practical ability" test to obtain documents remains largely undefined,

in the context of a case such as this one, if the assignee of the original mortgagee, or the

current loan servicer, can by custom or practice in the mortgage business informally

request and obtain the original loan file, and any related documents, including a payment

history, I would conclude that such documents are within the control of the party to

whom the discovery request is directed.  *See generally* 7-34 MOORE'S FEDERAL PRACTICE

- CIVIL § 34.14 ("The term 'control' is broadly construed.  The determination of whether

a party is in possession or control of documents or other materials can involve

consideration of a wide array of factors, including:  The use or purpose to which the

materials were employed. . . .  Who actually had access to and use of the materials. . . .

The ability of the party to the action to obtain the documents when it wants them. . . .

The nonparty's connection to the transaction at issue.") (footnotes omitted).

> The Court's experience with its substantial lift stay docket in consumer

bankruptcy cases strongly suggests that, at a minimum, copies of the original loan file

and payment history are routinely made available to the current mortgagee and the loan

servicer – it would be difficult or impossible to service the loan without them.  Indeed,

Saxon and Wells Fargo appear to acknowledge that they have and will produce copies of

Fremont's original loan files, although they will not represent that they have the complete original loan files. It is not too much to expect Saxon and Wells Fargo, in responding to the pending discovery requests, to ask Fremont and confirm to Debtors' counsel whether Saxon and Wells Fargo have already been provided with and have in turn produced those documents.[4]

The Debtors go further, however, and seek to compel Saxon and Wells Fargo to produce Fremont's loan manuals and information regarding its use of mortgage brokers in general and Bowie in particular. Fremont's business practices appear to be at the heart of the underlying disputes in this case. But the Court has no basis in the record to conclude that contract, agency or custom and practice in the business supports imposing this production obligation for such Fremont documents on Saxon and Wells Fargo. Clearly, the Debtors can seek such discovery directly from Fremont in the first instance. FED. R. CIV. P. 45 dealing with subpoenas applies in cases under the Bankruptcy Code. FED. R. BANKR. P. 9016. Now that Fremont has been named as a defendant in an adversary proceeding, once the complaint is served document discovery in that action can proceed under FED. R. CIV. P. 34.

Saxon and Wells Fargo argue that *Shcerbakovskiy* precludes discovery directed to Saxon or Wells Fargo seeking to obtain documents that are not currently in their possession, custody or control, even if they have the practical ability to obtain them from Fremont. At first blush, language in *Shcerbakovskiy* quoted earlier in this opinion, *see supra* at 9, appears to support their position. But the quoted sentences are ambiguous

---

[4]    If Saxon and Wells Fargo make the request of Fremont and it declines to respond within a reasonable period of time, counsel for Saxon and Wells Fargo should so advise Debtors' counsel and the Court. Depending on the circumstances failure to cooperate with discovery by Saxon, Wells Fargo or Fremont may lead to reallocation of discovery costs.

whether a responding party has an obligation to produce documents where "control" is based on a responding party's "practical ability" to obtain them unless the party requesting the documents has first sought to use compulsory process to obtain the documents directly or demonstrated that compulsory process is unavailable. Under Rule 34, neither Saxon nor Wells Fargo can be compelled at the risk of sanctions to produce documents that "it does not possess or cannot obtain." *Shcerbakovskiy*, 490 F.3d at 138. But what if the party to whom the request is directed has the practical ability to obtain the documents?

In *Shcerbakovskiy*, the Second Circuit reversed the district court's decision dismissing plaintiff's complaint and entering a default judgment against plaintiff on defendant's counterclaims as a sanction for plaintiff's failure to produce documents from IPT, a non-party Russian not-for-profit corporation. Plaintiff was chairman of the board of IPT and owned a minority interest in the company. *Id.* at 134. *Shcerbakovskiy* is fundamentally a sanctions decision, concluding that the district court abused its discretion in imposing the ultimate sanction of dismissal of the complaint and entry of a default judgment on the counterclaims resulting from a failure to produce documents. *Id.* at 135, 140. The plaintiff denied that he had the legal or practical ability to obtain the documents from the Russian company. *Id.* at 138. He supported this contention with an affidavit. The district court in the strongest possible terms found the plaintiff's factual claim to be untrue. *Id.* The district court also concluded that Russian law that allegedly prohibited production of the documents was irrelevant. *Id.* The Second Circuit panel concluded that the defendant was entitled to production of the documents but Russian law was relevant to the issues in the case and the appropriate sanction for failure to produce.

14

> Appellees [defendants] are entitled to the production of the documents in
> question if appellant [plaintiff] has access to them and can produce them.
> Appellees cannot as a practical matter compel IPT to produce them in this
> litigation, and they are of undoubted relevance to the counterclaims.  However,
> contrary to the district court's view, Russian law is relevant to the issues and
> poses no threat to the sovereignty of the United States.  If Russian law prohibits
> appellant from obtaining and producing the documents even with the agreement
> of IPT's board and an appropriate protective order in the district court, then the
> matter is at an end.

*Id.* at 139 (citations omitted).

Thus, in *Shcerbakovskiy*, the court of appeals recognized that the defendant could not compel IPT, the non-party Russian company, to produce the documents.  The defendant instead argued that the plaintiff, the chairman and minority shareholder of IPT, had the practical ability to obtain and produce the documents.  The plaintiff's ability to produce the documents raised both factual issues (*i.e.*, plaintiff's control of IPT as chairman of the Russian company) and legal issues (*i.e.*, whether Russian civil or criminal law prohibited production of IPT's documents in a U.S. legal proceeding).  *Id.* These issues as well as the appropriate sanction for non-compliance were left for the district court upon remand.  *Id.* at 139-40.

The statement in the court's opinion − "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required," *id.* at 138 − is clearly part of the court's holding necessary to the decision finding that production may be compelled.  On the other hand, the court's statement − "We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents," *id.* − is *dicta*.  Since the court acknowledged that defendant could not directly compel production from IPT, the issue whether a party must first seek production

from the non-party by compulsory process was not presented.  No authority is cited supporting the statement that a party need not seek documents from third parties if compulsory process is available to the party seeking production.  As already mentioned, *NASDAQ*, 169 F.R.D. at 530, is the only decision cited supporting production of non-party documents by a party with the "practical ability" to obtain them.  But *NASDAQ* did not limit the rule to cases in which the party seeking discovery first tried and failed to obtain the documents directly from the non-party by compulsory process.  None of the other cases the Court has found that conclude that "control" within the meaning of Rule 34 includes the practical ability to obtain and produce documents imposes such a limitation either.

The court's statement that a party "is not obliged to produce, at the risk of sanctions, documents that it does not possess and cannot obtain," 490 F.3d at 138, is supported with citations to Rule 34 and several cases, but only *E.E.O.C. v. Carrols Corp.,* 215 F.R.D. 46, 52 (N.D.N.Y. 2003) concerns whether a party should be required to pursue an alternate source for production of documents.  The cited portion of *Carrols* raised the issue whether a work product objection was overcome by a showing of "substantial need."  The court in *Carrols* stated:

> Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, Carrols must demonstrate that it cannot obtain the substantial equivalent of the information it seeks.  That does not mean that it must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source.  Of course, the prospect that other means are available to obtain the information may diminish the substantial need.

*Id.*

The "substantial need" standard is found in FED. R. CIV. P. 26(b)(3)(A)(ii)

(materials prepared in anticipation of litigation may be discovered if "(ii) the party shows it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). "Substantial need" and obtain "by other means" are not limitations imposed on document requests under Rule 34. Of course, the court may by order impose limitations on the timing and sequence of discovery, or impose protective orders, including "prescribing a discovery method other than the one selected by the party seeking discovery . . . ." FED. R. CIV. P. 26(c)(1)(C).

A court in the exercise of discretion in controlling discovery can always determine whether the party requesting the documents should first be required to use compulsory process to obtain the documents before permitting the requesting party to seek to compel another party to obtain documents from the third party. *See* FED. R. CIV. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."). But at least since the 1970 amendment to Rule 34 eliminating the requirement in the rule that a party seeking production from another party must show "good cause," the availability of the requested documents from another source alone has not relieved a party from the requirement of production. *See* FED. R. CIV. P. 34, Advisory Committee Notes, 1970 Amendment ("Good cause is eliminated because it has furnished an uncertain and erratic protection to the parties from whom production is sought and is now rendered unnecessary. . . . It has often been said in court opinions that good cause requires a consideration of the need for the materials and the alternative means of

17

obtaining them, i.e., something more than relevance and lack of privilege. . . .  To be sure, an appraisal of 'undue' burden or expense entails consideration of the need of the party seeking discovery.  With special protections added to govern trial preparation materials and experts, there is no longer any occasion to retain the requirement of good cause.").  In this case, it is more efficient, and the means are readily available, *i.e.*, FED. R. CIV. P. 45, for Debtors' counsel to seek production directly from Fremont of documents relating to Fremont's internal procedures and its use of loan brokers.  Otherwise, the Court and counsel may be required to embark on satellite litigation on questions – such as whether the party has the practical ability to obtain the documents – that are not germane to the underlying issues in dispute – here, whether the Debtors have an equitable interest in the Newburgh and Kingston properties.  In any event, on the record here, the Debtors have not carried their burden of demonstrating that Saxon and Wells Fargo have "control" over the disputed documents.

### D.      *Winnick I* and *Winnick II* Do Not Provide Authority to Compel Production

Debtors' counsel argues that *Winnick I* and *Winnick II* are directly on point and support compelling Saxon and Wells Fargo to obtain and produce the disputed documents from Fremont.  They do not.  In *Winnick I*, JP Morgan Chase ("JPM"), the administrative agent under a credit agreement between a consortium of approximately 50 banks ("Banks") and Global Crossing Ltd. ("Global Crossing"), filed suit against officers and directors of Global Crossing after the company defaulted on the loans and filed for bankruptcy.  JPM claimed that Global Crossing made fraudulent representations to the Banks, misleading the Banks into extending credit.  *Winnick I*, 228 F.R.D. at 506.  Before the suit was filed, many of the original Banks had transferred their interests in the credit,

along with their rights to tort claims asserted in the lawsuit. Defendants served discovery on JPM seeking documents and information in the *Banks*' possession, custody and control. JPM was the only plaintiff; the Banks were not parties to the litigation. JPM objected, arguing among other things that (1) the documents were not within JPM's possession, custody or control, (2) JPM's powers as agent did not include the right to demand documents, (3) the non-party Banks need not respond to discovery directed to parties, (4) the current holders of claims have no right to demand documents from their assignors, and (5) "it is not more burdensome for defendants to obtain discovery from the Banks than it is for JPM . . . ." *Id.* The defendants asserted numerous defenses to the lawsuit, including lack of reliance by the Banks when funding the borrowing requests. In concluding that in the circumstances of the case JPM could be compelled to produce the Banks' documents, the court did *not* rely on Rule 34. Rather, the court focused on the unfairness of permitting a *plaintiff* as agent or assignee to prosecute claims on behalf of others without bearing the burdens and expense of discovery. The court stated:

> It is both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim. If the plaintiff's theory carried the day, the assignor would be able to assign a claim more valuable than it could ever have, because its claim, if pursued by the assignor, would entail certain obligations that, when assigned, would magically disappear. Stated another way, on plaintiff's theory, by assigning their tort claims, the Banks also shifted onto defendants the cost of third-party discovery, where the third parties are the very institutions asserting that they were defrauded.

> It would be unfair to the defendants to permit plaintiff and the assignees to divorce the benefits of the claims from the obligations that come with the right to assert them, to the detriment of defendants. The burden of these discovery obligations is not insubstantial. Many of the original lenders are located outside the United States and thus beyond the subpoena power of the Court. Even in connection with some domestic parties that are not within the immediate power of this Court, defendants would have to persuade courts in other districts, unfamiliar with the litigation, to enforce subpoenas. The claims being asserted are those of

19

> the original lenders.  They cannot be asserted by an agent or assignee without the
> concomitant obligation to produce relevant discovery to defendants.  If plaintiff
> and the assignees failed to obtain rights to insist on cooperation from their
> assignors in providing such discovery, and cannot persuade the lending Banks to
> cooperate now, that is their problem, not defendants'.

*Id.* at 506-07.

The cases relied upon by the court in *Winnick I*, 228 F.R.D. at 507*,* imposed

discovery burdens on plaintiffs as assignees of claims originally belonging to others,

recognizing the unfairness of permitting a plaintiff to maintain claims while avoiding the

burdens of discovery.  *See Bank of New York,* 171 F.R.D. 135 (S.D.N.Y. 1997);

*Compagnie Française d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum*

*Co.,* 105 F.R.D. 16 (S.D.N.Y. 1984); *Firemen's Mutual Ins. Co. v. Erie-Lackawanna R.R.*

*Co.,* 35 F.R.D. 297 (N.D. Ohio 1964).  According to the court:

> The question posed in this dispute is who should properly bear the risks
> and burdens of discovery from the original lender Banks.  Comparing the position
> of JPM to that of defendants, the most reasonable conclusion is that plaintiff and
> assignees should bear the cost of discovery.  After all, since the assignees are
> suing in the shoes of the original lenders, having purchased the right to bring the
> lawsuit, there is nothing unfair about imposing on them the cost of purchasing
> cooperation or otherwise complying with discovery obligations.

*Winnick I*, 228 F.R.D. at 507.

In *Winnick II*, 2006 WL 278192, the court addressed JPM's motion to compel

discovery from non-party Citibank.  Citibank was one of the original lenders to Global

Crossing under the credit agreement, but it had assigned its claims to others before the

lawsuit was commenced.  In opposing the motion to compel, Citibank averred that it had

voluntarily produced more than 12,500 documents requested by JPM pursuant to

demands made by defendants.  *Id*. at *1.  Citibank objected to one outstanding demand

made by JPM in a *subpoena duces tecum* on grounds that compliance would impose

20

"tremendous burden and hardship." *Id.* The court adhered to its earlier decision in *Winnick I*, requiring JPM as a party plaintiff suing as agent or assignee to bear the burden and cost of discovery from non-party assignors. The court had already ruled that defendants were entitled to production of precisely the documents that JPM was seeking from Citibank. *Id.* at *3. But the court recognized that as a non-party responding to a subpoena, Citibank was protected by FED. R. CIV. P. 45(c)(3)(A)(iv), authorizing a court to quash or modify any subpoena that subjects a non-party "to undue burden." *Id.* at *2. JPM was thus seemingly presented with a catch-22 – the court held defendants were entitled to discover the disputed Citibank documents from JPM, but JPM's motion to compel production of the required documents from Citibank was denied because of undue burden. *Id.* ("The Court recognizes that requiring JPM to obtain discovery from the Original Lenders, and then refusing to compel the Original Lenders to produce that discovery, appears to place JPM in a double bind. But this is merely a consequence of the choices that JPM and the real Parties in Interest have made."). The court left open whether defendants would be entitled to sanctions against JPM, concluding that "will depend upon a showing of prejudice." *Id. Winnick II* did nothing to expand the underpinning of *Winnick I*, namely that a plaintiff suing as agent or assignee of others can be compelled to obtain and produce documents from the assignors.

As Saxon and Wells Fargo argue, they are not at this stage plaintiffs and they are not seeking affirmative relief against the Debtors. Rather, it is the Debtors who are claiming that they have an equitable interest in the Newburgh and Kingston properties. If and when Saxon and Wells Fargo seek affirmative relief, such as motions seeking to lift the automatic stay, the Court can address whether *Winnick I* and *Winnick II* apply. And

21

unlike the situation presented in the *Winnick* decisions, rather than 50 original lending banks, some of whom were outside the United States and not subject to discovery from the defendants, the discovery dispute here focuses on Fremont alone.  Even if the principles of *Winnick I* and *Winnick II* apply in these circumstances, the Court might well conclude that Debtors should seek discovery directly from Fremont as the Court could direct pursuant to FED. R. CIV. P. 26(b)(2)(C) and FED. R. CIV. P. 26(c)(1)(C).

Contrary to the arguments of Saxon and Wells Fargo, *Shcerbakovskiy*, 490 F.3d 130, does not address the appropriateness of shifting the cost and burden of discovery to a plaintiff suing as agent or assignee of claims originally belonging to others.  Thus, I cannot conclude that *Shcerbakovskiy* rejects the basis for the rulings in *Winnick I* or *Winnick II*.  There is no reason to address these issues further at this time.

Debtors' counsel also argues that in this chapter 13 case the Debtors, who are concededly of limited financial means, should not be required to undertake the burden and expense of discovery from Fremont using compulsory process.  Obtaining and serving a *subpoena duces tecum* on Fremont pursuant to FED. R. CIV. P. 45 should not entail a substantial financial burden on the Debtors.  Indeed, the Debtors' counsel could have obviated the need for this already protracted and no doubt expensive discovery dispute by directing third-party discovery to Fremont.  And now that Debtors have filed an adversary proceeding against Fremont, the Debtors will be able to seek document discovery from Fremont under FED. R. CIV. P. 34.

It is certainly true that bankruptcy courts, particularly in chapter 7 and 13 cases, are increasingly presented with issues concerning alleged misconduct by mortgage lenders and loan servicers, usually in the context of lift stay motions.  Because of changes

in the mortgage lending business, loans originated by one lender or mortgage broker are sold and resold, frequently to securitization trusts, with numerous changes along the way in the loan servicer as well.  It is unrealistic – and, in this Court's view, unnecessary – to expect *pro se* debtors, or even debtors represented by counsel, to undertake time-consuming and expensive discovery against numerous non-parties in the chain of ownership or servicing of mortgage loans, before being able to compel a party to produce documents it has the legal right, authority or practical ability to obtain, particularly if the current mortgagee or loan servicer is seeking affirmative relief such as lifting the automatic stay to permit foreclosure to proceed.  I do not read *Shcerbakovskiy's* holding as compelling such as result.  Indeed, in *Winnick I*, Judge Lynch rests the decision on the fact that the plaintiff is suing for damages, asserting the rights of non-parties, and in fairness the plaintiff should not be permitted to do so without bearing the burden of producing the non-parties' documents.  If and when the current mortgagees or loan servicers seek affirmative relief in this Court, *Winnick I* may be stronger precedent requiring them to obtain and produce non-party documents.

## CONCLUSION

For the foregoing reasons, the Debtors' motion to compel production of Fremont documents from Saxon and Wells Fargo that are not already in their possession, custody or control is **DENIED**.

**IT IS SO ORDERED.**

DATED:      August 13, 2008
            New York, New York

_____**/s/Martin Glenn**_____
            MARTIN GLENN
        United States Bankruptcy Judge